FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Sep 28, 2022

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LAURA JEAN R., [1] | NO: 2:21-CV-0237-LRS |
| Plaintiff, | |
| v. | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |
| KILOLO KIJAKAZI, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

BEFORE THE COURT are the parties' cross-motions for summary judgment. ECF Nos. 11, 12. This matter was submitted for consideration without oral argument. Plaintiff is represented by attorney Jeffrey Schwab. Defendant is represented by Special Assistant United States Attorney Nancy C. Zaragoza. The Court, having reviewed the administrative record and the parties' briefing, is fully

---

[1] The court identifies a plaintiff in a social security case only by the first name and last initial in order to protect privacy. See LCivR 5.2(c).

ORDER - 1

informed.  For the reasons discussed below, Plaintiff's Motion, ECF No. 11, is

denied and Defendant's Motion, ECF No. 12, is granted.

## JURISDICTION

Plaintiff Laura Jean R. (Plaintiff), filed for supplemental security income

(SSI) on September 21, 2018,[2] and alleged an onset date of December 22, 2014.  Tr.

172-77.  Benefits were denied initially, Tr. 100-03, and upon reconsideration, Tr.

108-10.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on

November 16, 2020.  Tr. 40-71.  On December 16, 2020, the ALJ issued an

unfavorable decision, Tr. 12-30, and on June 11, 2021, the Appeals Council denied

review.  Tr. 1-6.  The matter is now before this Court pursuant to 42 U.S.C. §

1383(c)(3).

## BACKGROUND

The facts of the case are set forth in the administrative hearing and transcripts,

the ALJ's decision, and the briefs of Plaintiff and the Commissioner, and are

therefore only summarized here.

Plaintiff was 41 years old at the time of the hearing.  Tr. 46.  She completed

her sophomore year of high school.  Tr. 47.  She has work experience as a caregiver.

Tr. 57.  She has dyslexia.  Tr. 47.  Plaintiff testified she is unable to work due to

---

[2] Under Title XVI, benefits are not payable before the date of application.  20
C.F.R. §§ 416.305, 416.330(a); S.S.R. 83-20.

ORDER - 2

1  mental health issues and a vision problem.  Tr. 48.  She has depression and anxiety.

2  Tr. 48.  She is stressed and worried all the time.  Tr. 49.  She cannot drive due to her

3  vision.  Tr. 50.

4  ## STANDARD OF REVIEW

5  A district court's review of a final decision of the Commissioner of Social

6  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7  limited; the Commissioner's decision will be disturbed "only if it is not supported by

8  substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158

9  (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable

10  mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and

11  citation omitted).  Stated differently, substantial evidence equates to "more than a

12  mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted).

13  In determining whether the standard has been satisfied, a reviewing court must

14  consider the entire record as a whole rather than searching for supporting evidence in

15  isolation. *Id.*

16  In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156

18  (9th Cir. 2001).  If the evidence in the record "is susceptible to more than one

19  rational interpretation, [the court] must uphold the ALJ's findings if they are

20  supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674

21  F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's

decision on account of an error that is harmless." *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. § 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

1    If the claimant is not engaged in substantial gainful activity, the analysis

2  proceeds to step two.  At this step, the Commissioner considers the severity of the

3  claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from

4  "any impairment or combination of impairments which significantly limits [his or

5  her] physical or mental ability to do basic work activities," the analysis proceeds to

6  step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy

7  this severity threshold, however, the Commissioner must find that the claimant is not

8  disabled.  20 C.F.R. § 416.920(c).

9    At step three, the Commissioner compares the claimant's impairment to

10  severe impairments recognized by the Commissioner to be so severe as to preclude a

11  person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).

12  If the impairment is as severe or more severe than one of the enumerated

13  impairments, the Commissioner must find the claimant disabled and award benefits.

14  20 C.F.R. § 416.920(d).

15    If the severity of the claimant's impairment does not meet or exceed the

16  severity of the enumerated impairments, the Commissioner must pause to assess the

17  claimant's "residual functional capacity."  Residual functional capacity (RFC),

18  defined generally as the claimant's ability to perform physical and mental work

19  activities on a sustained basis despite his or her limitations, 20 C.F.R. §

20  416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

21

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner should conclude whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

**ALJ'S FINDINGS**

At step one, the ALJ found Plaintiff did not engage in substantial gainful activity since September 21, 2018, the application date. Tr. 17. At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder; generalized anxiety disorder; specific learning disorder; post-traumatic stress disorder (PTSD); panic disorder; impaired vision in the left eye; and obesity. Tr. 17. At step three, the ALJ found that does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Tr. 18.

The ALJ then found that Plaintiff has the residual functional capacity to perform medium work with the following additional limitations:

> she can never climb ladders or scaffolds; she must avoid hazards such as dangerous moving machinery and unprotected heights; she cannot perform commercial driving; she can perform simple, routine, unskilled tasks with only occasional and simple changes in the work setting; and she can perform work involving only superficial interaction with the public and coworkers.

Tr. 19.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work. Tr. 25. At step five, after considering the testimony of a vocational expert and Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform such as bottle packer, bottle line attendant, or hand packager. Tr. 25-26. Thus, the ALJ found Plaintiff has not been

under a disability as defined in the Social Security Act since September 21, 2018, the date the application was filed.  Tr. 26.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying supplemental security income under Title XVI of the Social Security Act.  ECF No. 11.  Plaintiff raises the following issues for review:

1.    Whether the ALJ properly considered the Listings at step three;

2.    Whether the ALJ properly evaluated Plaintiff's residual functional capacity; and

3.    Whether the ALJ made a legally sufficient step five finding.

ECF No. 11 at 2.

## DISCUSSION

**A.    Step Three**

Plaintiff contends the ALJ failed to properly consider Listings 12.04 and 12.06 regarding her mental health and cognitive impairments.  ECF No. 11 at 7-11.  At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals an impairment contained in the Listings.  See 20 C.F.R. § 416.920(d).  The Listings describe "each of the major body systems impairments [considered] to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925.  "Listed impairments

are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.'" *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 738 F.3d at 1176. If a claimant meets the listed criteria for disability, he will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii).

An impairment "meets" a listing if it meets all of the specified medical criteria. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify. *Sullivan*, 493 U.S. at 530; *Tackett*, 180 F.3d at 1099. An unlisted impairment or combination of impairments "equals" a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present. *Sullivan*, 493 U.S. at 531; *see* 20 C.F.R. § 404.1526(b).

"If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099. However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." 20 C.F.R. § 416.926(a). The

claimant bears the burden of establishing an impairment (or combination of impairments) meets or equals the criteria of a listed impairment. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

To meet Listing 12.04 for depressive disorder or Listing 12.06 for anxiety disorder, the claimant must satisfy the criteria of Paragraph A and the criteria of either Paragraph B or C criteria of the listing.[3]  20 C.F.R. § 404, Appendix 1 to Subpt. P, §§ 12.04, 12.06.

The Paragraph B criteria for both depressive disorder and anxiety disorder is met if the impairment results in an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist or maintain pace; or (4) adapt or manage oneself. *Id.*  The regulations define a "moderate limitation" as a "fair" ability to function "independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Part 404 Subpart P, Appendix 1, § 12.00F(2).  A "marked limitation" is defined as "seriously limited" ability to do the same. *Id.*

The ALJ found Plaintiff has "at most" moderate limitations in each of the four areas of mental functioning of the Paragraph B criteria.  Tr. 18.  Plaintiff argues she is markedly impaired in two functional areas: (1) interacting with others; and (2) concentrating, persisting, or maintaining pace.  ECF No. 11 at 8-11.

---

[3] The criteria of Paragraph A and Paragraph C are not at issue in this case.

With respect to interacting with others, the ALJ noted Plaintiff testified that she has problems socializing. Tr. 18, 49, 53. However, she did not report any problems getting along with others in her function report, Tr. 259-60, and she also testified she socializes a little with friends and family, Tr. 49. Tr. 18; *see* Tr. 339 ("her friends would describe her as the person who makes everyone laugh"), 355 (in the past she has enjoyed group activities; one of her priorities is friends and she would like to give more time and energy toward friendships). The ALJ observed Plaintiff testified she does not talk to strangers, but then acknowledged she can talk to a cashier at a store, go to public places such as a grocery store, and use public transportation. Tr. 18, 49, 53, 55, 257. Additionally, the ALJ noted Plaintiff has presented on exam as cooperative, pleasant, interactive, and engaged. Tr. 18, 359-60, 368, 394, 411, 414, 422. For these reasons, the ALJ reasonably found Plaintiff has a fair ability to interact with others independently, appropriately, effectively, and on a sustained basis, consistent with "at most" a moderate limitation under the Paragraph B criteria.

Plaintiff cites records indicating Plaintiff reported symptoms such as having a hard time staying connected, feeling depressed, feeling anxious, procrastinating, and struggling with confidence. ECF No. 11 at 8 (citing Tr. 354). She also noted examining psychologist Patrick Metoyer, Ph.D., indicated she would have a marked impairment in the ability to deal with the usual stress encountered in the workplace, but acknowledged this was a functional assessment, discussed *infra*, and not a

Paragraph B criteria analysis. ECF No. 11 at 8 (citing Tr. 370). The limitations identified in the Paragraph B are not an RFC assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. Social Security Ruling 96-8p, 1996 WL 374184 at *4 (July 2, 1996). Dr. Metoyer's functional assessment is not properly applied to the Paragraph B analysis, so this finding does not apply in this context.

Plaintiff also asserts she "has been hospitalized for mental illness previously," ECF No. 11 at 8, but this is not supported by the record. One record cited indicates Plaintiff was hospitalized five years prior due to a reaction with medication, Tr. 413, and the other record is nonspecific and appears to reference Plaintiff's mother rather than Plaintiff. Tr. 380 ("Her mother was bipolar, and was always up and down. She was sometimes admitted to the hospital."). According to Plaintiff, these records "implicate[] marked impairment in the B criteria for the ability to interact with others because it illustrates severe impairment in this area." ECF No. 11 at 8.

Plaintiff's argument is without merit. First, the measure of a marked impairment under Paragraph B is not whether it is a "severe" impairment; the measure whether the claimant is "seriously limited" in her ability to interact with others. 20 C.F.R. Part 404 Subpart P, Appendix 1, § 12.00F(2). Second, the court disagrees that the findings cited by Plaintiff reflect a marked impairment. The ALJ cited evidence in the record that while Plaintiff is socially impaired, she is able to function. Even if the evidence conflicts or could be interpreted differently, the ALJ,

not this court, is responsible for reviewing the evidence and resolving conflicts or ambiguities. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989); *see also Richardson v. Perales*, 402 U.S. 389, 400 (1971).

With respect to concentration, persistence, and pace, the ALJ noted Plaintiff alleged she can only pay attention for a short time. Tr. 18, 259. However, Plaintiff's attention and concentration were typically within normal limits on exam. Tr. 18, 360, 382, 415, 433, 439, 444. During Dr. Metoyer's exam, Plaintiff had some difficulty with serial 3s and 7s and difficulty spelling "world" backward, but spelled "world" forward correctly, followed the conversation, and followed a three-step command. Tr. 366-67. Accordingly, the ALJ reasonably found Plaintiff has a fair ability to maintain concentration, persistence and pace on a sustained basis, consistent with "at most" a moderate limitation under the Paragraph B criteria.

Plaintiff contends Dr. Metoyer's findings "demonstrate marked level of impairment." ECF No. 11 at 9. The basis for this claim is unclear, as Dr. Metoyer opined "[s]ustained concentration and persistence are adequate based on brief concentration tasks of this evaluation." Tr. 370. To the extent Plaintiff was referencing Dr. Metoyer's assessment of a marked limitation in the ability to deal

ORDER - 13

with the usual stress encountered in the workplace,[4] the ALJ rejected the limitation to the extent it exceeds the RFC finding. *See infra*. Plaintiff cites her complaints that she has trouble concentrating or focusing sometimes, that it is hard for her to get out of bed every day, and other symptom statements made to her counselor and Dr. Metoyer. ECF No. 11 at 10-11 (citing Tr. 354, 358, 366-67). Plaintiff's symptom allegations were given less weight by the ALJ, discussed *infra*, and, regardless, at best Plaintiff has raised a potential conflict in the evidence. As noted *supra*, the ALJ, it is the ALJ's duty to resolve conflicts and ambiguity in the medical and non-medical evidence. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599-600 (9th Cir. 1999). It is not the role of the court to second-guess the ALJ. *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). The ALJ's Paragraph B findings are supported by substantial evidence.

Lastly, to the extent Plaintiff raised the issue that the combined effect of her impairments equals a listing, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch*, 400 F.3d at 683. An ALJ does not have an obligation to

---

[4] The marked limitation assessed by Dr. Metoyer is qualified: "if it involves persistent activity, complex tasks, task pressure, interacting with other individuals." Tr. 370.

ORDER - 14

discuss medical equivalency *sua sponte* and does not err by failing to do so when the issue was not argued or explained at the hearing. *See Ford v. Saul*, 950 F.3d 1141, 1157 (9th Cir. 2020). In this case, the issue of equivalency was raised in passing in summary judgment briefing, ECF No. 11 at 11, and was not raised, argued, explained, or mentioned at the hearing. Thus, the ALJ did not err by failing to specifically discuss equivalency in the decision.

**B.    Subjective Complaints**

Plaintiff contends the ALJ improperly considered her subjective complaints. ECF No. 11 at 13-15. An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina*, 674 F.3d at 1112 (internal quotation marks omitted). Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).

The ALJ gave five reasons for finding Plaintiff's level of functioning is not as limited as alleged. First, the ALJ found Plaintiff's daily activities are inconsistent with the extent of mental impairment alleged. Tr. 20. It is reasonable

for an ALJ to consider a claimant's activities which undermine claims of totally disabling pain in assessing a claimant's symptom complaints. *See Rollins*, 261 F.3d at 857. Second, the ALJ found the limited medical record and lack of treatment during the relevant period is not consistent with allegations of disabling limitations. Tr. 21. When there is no evidence suggesting a failure to seek treatment is attributable to a mental impairment rather than personal preference, it is reasonable for the ALJ to conclude that the level or frequency of treatment is inconsistent with the level of complaints. *Molina v. Astrue*, 674 F.3d 1104, 1113-14 (9th Cir. 2012). Third, the ALJ found the objective evidence is not consistent with disabling limitations. Tr. 21. Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony. *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995).

Fourth, the ALJ found Plaintiff's treatment improved her symptoms. Tr. 22. The effectiveness of treatment is a relevant factor in determining the severity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(3); *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (recognizing that a favorable response to treatment can undermine a claimant's complaints of debilitating pain or other severe limitations). Fifth, the ALJ found Plaintiff's work history is inconsistent and sporadic which raises a question as to whether her unemployment is due to medical impairments or other reasons. Tr. 22. Limited work history is a clear and convincing reason for

1   rejecting subjective symptom allegations. *See Marsh v. Colvin*, 792 F.3d 1170,

2   1174 n.2 (9th Cir. 2015).  The ALJ explained each of these reasons in detail with

3   citations to the record.  Tr. 20-22.

4        Plaintiff argues only that the ALJ improperly considered her daily activities.

5   ECF No. 11 at 14.  Plaintiff notes the ALJ found that she is a single mother of a

6   young child, cares for him on a daily basis, gets him ready for school, prepares

7   meals, and takes him to and from school.  Tr. 20-21.  Plaintiff argues the ALJ

8   "failed to note that she also lost custody of her other two children" and that she did

9   not contest the loss of custody "because she was sufficiently aware of how her

10  mental health affects her ability to care for her children."  ECF No. 11 at 14 (citing

11  Tr. 332, 368, 443).  However, the basis for this argument is not established in the

12  record.  Plaintiff cites her own brief to the Appeals Council (Tr. 332), a record

13  noting she has three children and that she has custody of her eight-year-old (Tr.

14  368), and a record noting she is "taking care of her 8-year-old son, 2 teenage

15  children are with her father" (Tr. 443).  She testified that her two older children

16  live with their dad and that, "due to my mental health . . . that's the reason why we

17  don't have a relationship."  Tr. 59-60.  None of these records establish that she

18  "did not contest loss of custody" due to her mental health, so the ALJ did not err

19  by failing to address that contention.  Even if there was such a record, it would not

20  necessarily follow that the ALJ's greater point about Plaintiff's daily activities is

21  invalid.

1    Plaintiff also argues the ALJ failed to describe how the ability to perform her

2    daily activities is evidence of an ability to function in the workplace.  ECF No. 11 at

3    14 (citing *Trevizo v. Berryhill*, 871 F.3d 664, 675-76 (9th Cir. 2017).  Even if a

4    claimant's daily activities do not demonstrate the claimant can work, they may

5    undermine the claimant's complaints if they suggest the severity of alleged

6    limitations were exaggerated.  *See Valentine v. Comm'r of Soc. Sec. Admin.*, 574

7    F.3d 685, 693 (9th Cir. 2009).  Furthermore, "[e]ven where [Plaintiff's daily]

8    activities suggest some difficulty functioning, they may be grounds for discrediting

9    the claimant's testimony to the extent that they contradict claims of a totally

10    debilitating impairment." *Molina*, 674 F.3d at 1113.  The ALJ gave examples of

11    contradictions between Plaintiff's allegations and her activities. Tr. 20-21.  Plaintiff

12    does not refute these contradictions and they are supported by substantial evidence.

13    None of the ALJ's other reasons for giving less weight to Plaintiff's symptom

14    allegations are specifically challenged by Plaintiff and the court concludes they are

15    specific, clear, convincing, and supported by substantial evidence.

16    **C.    RFC and Step Five**

17    Plaintiff asserts the ALJ's finding that Plaintiff can perform other work was

18    based on a flawed RFC and hypothetical to the vocational expert.  ECF No. 11 at 15-

19    16.  The ALJ's hypothetical must be based on medical assumptions supported by

20    substantial evidence in the record which reflect all of a claimant's limitations.

21    *Osenbrook v. Apfel*, 240 F.3D 1157, 1165 (9th Cir. 2001).  The hypothetical should

be "accurate, detailed, and supported by the medical record." *Tackett*, 180 F.3d at

1101.  The ALJ is not bound to accept as true the restrictions presented in a

hypothetical question propounded by a claimant's counsel. *Osenbrook*, 240 F.3d at

1164; *Magallanes v. Bowen*, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v.

Heckler*, 807 F.2d 771, 773 (9th Cir. 1986).  The ALJ is free to accept or reject these

restrictions as long as they are supported by substantial evidence, even when there is

conflicting medical evidence. *Magallanes*, 881 F.2d at *id.*

Plaintiff asserts the ALJ erred by failing to include limitations for diminished

productivity or absenteeism in the RFC finding.  ECF No. 11 at 16 (citing Tr. 19).

Plaintiff points out the vocational expert testified that a person needs to be on task,

productive and present a minimum of 95 percent of the workday, and that

absenteeism, including tardiness, in excess of two days per month would not be

tolerated.  ECF No. 11 at 16; Tr. 69-70.  Plaintiff argues that opinions from Vincent

Gollogly, Ph.D, and Patrick Metoyer, Ph.D, establish that Plaintiff is moderately

impaired in her ability to complete a normal workday or workweek.  ECF No. 11 at

16 (citing Tr. 91).  According to Plaintiff, "[t]he issue, then, is whether the opinions

of Dr. Metoyer and Dr. Gollogly should be credited as to absenteeism." ECF No. 11

at 16.

### 1. *Vincent Gollogly, Ph.D*

Dr. Gollogly reviewed the record in October 2019 and completed a mental

residual functional capacity assessment.  Tr. 90-92.  Relevantly, Dr. Gollogly opined

that Plaintiff is not significantly limited in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances. Tr. 90. This finding contradicts Plaintiff's argument that Dr. Gollogly's opinion supports a limitation on attendance. Plaintiff also cites Dr. Gollogly's opinion that Plaintiff is moderately limited in the ability to complete a normal workday and workweek without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 91. In a narrative, Dr. Gollogly explained Plaintiff is "capable of SRT 1-3 step tasks. Claimant should have superficial contact with others and symptoms would wax and wane but w[ith] normal breaks able to sustain normal workday/workweek." Tr. 91. Again, Dr. Gollogly noted some impairment, but ultimately opined that Plaintiff should be able to sustain a normal workday and workweek. This also contradicts Plaintiff's argument.

Furthermore, the ALJ found Dr. Gollogly's opinion is "generally persuasive" but did not adopt his limitations in full where they were not consistent with the record as a whole.[5] Tr. 23. Specifically, the ALJ noted that although Dr. Gollogly

---

[5] For claims filed on or after March 27, 2017, the ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources. 20 C.F.R. § 416.920c(a) and (b). Supportability and consistency are the most important factors in evaluating the persuasiveness of

opined that Plaintiff is limited to 3-step tasks, this limitation was not adopted

because it is not consistent with unremarkable findings regarding cognition and

concentration. Tr. 23 (citing 360, 368, 370, 382, 415, 433, 439, 444). Instead, the

ALJ found Plaintiff is capable of simple, routine, unskilled tasks. Tr. 19, 23. Thus,

to the extent Dr. Gollogly's opinion that Plaintiff is limited to 3-step tasks reflects a

limitation on productivity or attendance, it was reasonably rejected by the ALJ as

unsupported.

### 2.  Patrick Metoyer, Ph.D

Dr. Metoyer conducted a consultative examination in October 2019 which the

ALJ found to be generally persuasive. Tr. 24, 366-70. He assessed moderate

limitations in the abilities to: interact with coworkers and the public; maintain

regular attendance in the workplace; and complete a normal workday or work week

without interruptions from mental health symptoms. Tr. 370. He assessed a marked

limitation in the ability to deal with the usual stress encountered in the workplace "if

it involves persistent activity, complex tasks, task pressure, interacting with other

individuals." Tr. 370.

The ALJ found Dr. Metoyer's opinion to be generally persuasive. Tr. 24. The

ALJ explained that the moderate limitations assessed by Dr. Metoyer are generally

_____

medical opinions and prior administrative findings, and therefore the ALJ is

required to explain how both factors were considered. 20 C.F.R. § 416.920c(b)(2).

1   well-supported by his own findings and consistent with the record as a whole,

2   Plaintiff's activities, and Plaintiff's treatment record, with citations to specific

3   supporting records.  Tr. 24.  The ALJ found the marked limitation in dealing with

4   stress in the workplace is at least partially accounted for by the RFC limitation to

5   simple, routine, unskilled tasks with only simple and occasional changes in the work

6   setting and only superficial interaction with the public and coworkers.  Tr. 24.

7        Plaintiff argues that Dr. Metoyer's opinion "should be credited as to

8   absenteeism." ECF No. 11 at 16.  It is not clear exactly what Plaintiff means, in

9   light of the ALJ's findings regarding Dr. Metoyer's opinion.  Plaintiff does not

10  challenge the weight the ALJ assigned to the opinion and this general argument is

11  insufficient to overcome the detailed findings and explanation made by the ALJ.

12       The RFC determination is an administrative finding reserved to the

13  Commissioner.  *See* 20 C.F.R. §§ 404.1527(d)(1), (2); 416.927(d)(1), (2);

14  *Dominguez v. Colvin*, 808 F.3d 403, 409 (9th Cir. 2015).  In making this finding, the

15  ALJ need only include credible limitations supported by substantial evidence.

16  *Batson*, 359 F.3d at 1197 (holding that ALJ is not required to incorporate evidence

17  from discounted medical opinions into the RFC).  *Vertigan v. Halter*, 260 F.3d

18  1044, 1049 (9th Cir. 2001) ("It is clear that it is the responsibility of the ALJ, not the

19  claimant's physician, to determine [RFC].");  *Lynch Guzman v. Astrue*, 365 F. App'x

20  869, 870 (9th Cir. 2010).  Here, the ALJ provided a detailed review of the medical

21  evidence, including the opinion of Dr. Metoyer and other evidence in developing the

RFC.  Plaintiff has not shown that the ALJ erred in formulating Plaintiff's RFC or in considering the medical opinion evidence.

## CONCLUSION

Having reviewed the record and the ALJ's findings, this Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error.

Accordingly,

1. Plaintiff's Motion for Summary Judgment, ECF No. 11, is DENIED.

2. Defendant's Motion for Summary Judgment, ECF No. 12, is GRANTED.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order and provide copies to counsel.  Judgment shall be entered for Defendant and the file shall be **CLOSED**.

**DATED** September 28, 2022.

LONNY R. SUKO
Senior United States District Judge

ORDER - 23